IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Darryl Radford, | ) | Case No.: 4:20-cv-04354-JD-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Hospital Housekeeping Systems, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) of the District of South Carolina.[1] (DE 53.) Plaintiff Darryl Radford ("Plaintiff" or "Radford") brought this action against his employer, Defendant Hospital Housekeeping Systems, LLC ("Defendant" or "HHS"), alleging (1) race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), (2) violation of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to 110 ("SCPWA"), and (3) wrongful termination in violation of public policy. (DE 27.) On October 22, 2021, HHS filed a Motion for Summary Judgment seeking to dismiss Radford's claims. (DE 32.) On November 19, 2021,

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

Radford filed a response Memorandum in Opposition to HHS's Motion for Summary Judgment.[2] (DE 38.) The parties have briefed the issues to include a reply and sur-reply.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

Radford was permanently assigned as director to the hospital system of the Medical University of South Carolina ("MUSC") in Marion County, South Carolina ("MUSC Marion") in June 2019. (DE 27, ¶ 9.) In his position, Radford was accountable for directing the management of the environmental services department of the hospital, which included organizing and directing a team to maintain the hospital in a clean and safe manner. (DE 27, ¶ 10.) Plaintiff managed about 43 employees at MUSC Marion, including housekeepers, floor techs, hazardous waste handlers, and other environmental services personnel responsible for providing a safe, sanitary environment and for preventing hospital-acquired infections. (DE 27, ¶ 13.)

In March 2020, as the COVID-19 pandemic became widespread, HHS deemed Radford and his team essential personnel. (DE 27 ¶ 14, DE 38-2.) During this time, Radford's team accumulated Paid Time Off ("PTO") that they were not allowed to take due to the staff shortage, being deemed essential personnel, and the demands of the job. (DE 27 ¶ 18, DE 38-3, pp. 6-7.) In May 2020, MUSC Marion hospital administration informed Radford that HHS's services

---

[2] In conjunction with his response, Plaintiff has submitted an "affidavit and verification," which included that he "declare[s] under penalty of perjury that the foregoing is true and correct." (DE 38-1, ¶ 8.) Radford's Complaint did not include a verification. Although the Report notes Radford's opposition to summary judgment relying on his Complaint and affidavit lacks a factual basis, the Report nevertheless indicates that this discrepancy does not alter its recommendations. Accordingly, to the extent the Report recommends a lack of factual sufficiency regarding Radford's opposition to Defendant's motion for summary judgment, the Court declines to follow the recommendation.

would no longer be required, effective August 1, 2020, as the hospital was switching to a different provider, and a new environmental service administrator was hired. (DE 27 ¶ 20.) On or about June 15, 2020, Radford learned from the new hospital administration that the company replacing HHS would not honor his team's accumulated PTO. (DE 27, ¶ 21.) Radford called Justin Hammer ("Hammer"), HHS's executive vice president, to discuss a plan to allow Radford's team members to use their PTO prior to the end of the contract, and he further alleges in that conversation, Hammer authorized Radford's plan. (DE 27 ¶¶ 16, 21, DE 38:3, pp. 4-6.) Radford's plan would permit employees to receive PTO for their scheduled days off, and Radford indicates that Hammer said, "that's fine, as long as everybody is in agreement and our procedures are followed." (DE 27, ¶ 21.) Defendant's PTO policy provides in pertinent part that:

> It is against company policy to pay a[] team member for vacation in lieu of taking time off.
>
> Team members are not entitled to any cash value of vacation benefits or termination. Vacation pay will not be paid out upon termination unless the state law where the team member resides requires the payout of unused balances. If the employer's policy over-rides state law in that said state then the unused accrued time will not be paid out.

(DE 32-1 at 2.) Despite the PTO policy, Radford authorized PTO to be paid to his team members on their scheduled days off, resulting in some team members being paid for six or seven days of work in July. (DE 38-3, p. 4, l:19–21, DE 38-7, p. 4, DE 27, ¶¶ 22–23.) On July 29, 2020, Radford received a call from Hammer, who asked him about the use of PTO and indicated that HHS was investigating the PTO payment for scheduled days off. Although Radford indicated that he had Hammer's approval for the PTO payments, Radford's employment was terminated "based on violation of PTO policy and payroll practice." (DE 38-7, p. 2.) In addition, Radford testified he was never told he was terminated because of his race, and the only

reason he was given for his termination was that he violated the company's policy in terms of how PTO was to be used. (DE 32-2, p. 4:6–20.)

Radford's last pay statement shows he was a salaried employee, receiving biweekly checks, based upon a presumed 40-hour work week, and that he was paid for 72 hours for this time. (DE 32-5.) The parties agree that Radford's last day of work was July 30, 2020, prior to the end of the pay period ending August 1, 2020. (DE 32-5, DE 44, pp. 2–3.) Radford alleges this paycheck is "short at least $172.26," and, at the time of separation from employment, he had accrued, but never received, compensation for 120 hours of PTO that he was unable to take due to the pandemic. (DE 27, ¶¶ 34–35.)

On July 8, 2022, the magistrate judge issued the Report, recommending that HHS's Motion for Summary Judgment be granted as to Radford's Title VII, SCPWA paid time off accrual compensation, and wrongful termination in violation of public policy claims; however, the Report recommends denying summary judgment as to Radford's SCPWA unpaid compensation claim. (DE 53.) For the reasons stated below, the Court adopts the Report and Recommendation as modified herein and, therefore, grants and denies in part Defendant's Motion for Summary Judgment as provided herein.

## DISCUSSION

On July 29, 2022, Radford filed an objection to the Report (DE 56). However, to be actionable, objections to a report and recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the

4

district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985)). "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003). "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that Radford raises the following objections to the Report: 1) there is sufficient evidence to support a Title VII and Retaliation claim, 2) there is sufficient evidence to show a policy or practice for PTO payments at termination to support a SCPWA claim, and 3) there is a fact dispute regarding whether Radford's discharge for paying employees PTO for scheduled days off was contrary to public policy.³ First, as to Radford's public policy objection, "[i]n South Carolina, employment at-will is presumed absent the creation of a specific contract of employment." Barron v. Labor Finders of S.C., 393 S.C. 609, 614, 713 S.E.2d 634, 636 (2011). "Under the 'public policy exception' to the at-will employment doctrine, however, an at-will employee has a cause of action in tort for wrongful termination *where there is a retaliatory termination* of the at-will employee in violation of a *clear mandate* of public policy." Barron, 393 S.C. at 614, 713 S.E.2d at 636-37 (emphasis added). Radford contends the Report is erroneous because the employees' accrued PTO constitutes "wages" under the SCPWA, and

---

³ Although Radford objects to the Report's reference to the sufficiency of his affidavit and verification, the Court declines to consider this objection in light of its ruling at n. 2 supra.

because Defendant's discharge of Radford for facilitating the employees' use of their PTO creates a triable issue as to whether he was wrongfully discharged in violation of public policy. (DE 56, pp. 15-16.)  The Court disagrees.  Under South Carolina law, "[t]he determination of what constitutes public policy is a question of law for the courts to decide."  Barron, 339 S.C. at 617, 713 S.E.2d at 638.  Therefore, resolution of "whether employees' accrued PTO constitutes 'wages' under the SCPWA" is not dispositive of the public policy exception here.  (DE 56, p. 15.)

Furthermore, Radford's discharge for paying PTO to employees for their scheduled days off is not a "violation of a clear mandate of public policy."  Barron, 339 S.C. at 614, 713 S.E.2d at 638.  Under the SCPWA, "'[w]ages' means all amounts at which labor rendered is recompensed . . . and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract."  S.C. Code Ann. § 41-10-10(2).  Here, the statute does not mandate vacation pay of scheduled days off, and Radford has not offered any evidence to support the same.  Moreover, HHS does not have a policy directing such payments.  Given the lack of a statutory mandate or an expressed policy by HHS, and accepting as true that Hammer authorized Radford to pay the employees their PTO for scheduled days off, the Court finds, based on the facts viewed in a light most favorable to Radford, no violation of a *clear mandate* of public policy has occurred.  See Barron v. Labor Finders of S.C., 713 S.E.2d at 636-37.

Next, Radford objects to the Report's finding that "Defendant has submitted limited argument and evidence that it did not pay PTO at termination, and Plaintiff has failed to rebut that evidence, nor otherwise present a bona fide dispute on this issue."  (DE 53, p. 25.)  To support his objection, Radford contends that "Molnar's testimony is sufficient to create a triable

issue on whether PTO was due to Plaintiff upon separation based upon Defendant's policy and practice." However, this objection does not address the substance of the Report's finding. While the Report stated that "Plaintiff has also submitted the somewhat confusing testimony from Molnar, that appears to address PTO payouts when a hospital loses a contract verses when an employee is terminated . . . ," the Report also found that:

> Plaintiff submits no argument or evidence that such a policy, practice, or contract exists, and, in his deposition, he testified as follows:
> Q: Paid time off is a benefit that you accrue while you're working, correct?
> A: Correct.
> Q: And in order to get the benefit of that you have to use it because, if you go to another job or get fired, you don't take that benefit with you after you leave—
> A: Correct.
> Q: —the company, right?
> A: That is correct.
> Q: So it's a use it or lose it type benefit, correct?
> A: That's correct.

(DE 53, p. 24.) The Report correctly noted that "Plaintiff argues—without addressing his testimony above—that Defendant has failed to provide 'a policy giving it the right to withhold accrued PTO to salaried employees such as Plaintiff,' where Defendant has submitted a policy applicable only to hourly employees." (DE 53, p. 25.) Equally, Radford has not addressed his own testimony in his objection. Radford cannot survive summary judgment by offering evidence (albeit not on point) to contradict his own testimony. See Williams v. Genex Servs., LLC, 809 F.3d 103, 110 (4th Cir. 2015) ("It is well-settled that a plaintiff may not avoid summary judgment by submitting contradictory evidence.")

In addition, Radford objects to the Report contending that "[t]he Magistrate [Judge] concluded that Plaintiff has failed to demonstrate that the legitimate reason produced by Defendant for his termination, a violation of PTO policy and payroll practice, is pretextual."

7

(DE 56, pp. 4-5, citing DE 53, p. 15.)  The Report ably and comprehensively lays out the McDonnell Douglas allocation of the burden of production and the order for the presentation of proof in a Title VII Discrimination case.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also DE 53, pp. 14-15.  To that end, the Report states, "[e]ven assuming Plaintiff can establish a prima facie case of race-based employment discharge, he has failed to demonstrate that the legitimate reason produced by Defendant for his termination, a violation of PTO policy and payroll practice, is pretext for discrimination."  (DE 53, p. 15.)  Under the McDonnel Douglas framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000).

      Accordingly, since HHS has produced a nondiscriminatory explanation for its decision, Radford may "establish that he was the victim of intentional discrimination . . . by showing that the employer's proffered explanation is unworthy of credence."  Reeves, 530 U.S. at 143.  "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, (citation omitted) the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual[.]'"  Id.  Although Radford does not challenge the PTO policy's expressed language which states "[i]t is against company policy to pay a[] team member for vacation in lieu of taking time off[,]" nevertheless, he argues that Hammer knew and approved of his actions.  However, Hammer's knowledge and approval standing alone do not establish a pretext for his discharge.  Likewise, Radford's evidence of other employees being paid PTO in weeks where they worked more than 40 hours does not show that HHS's proffered explanation for his discharge is false.  Rather, it shows that PTO can be

taken even where an employee has worked more than 40 hours. The Report correctly states, "[t]he court need not decide 'whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000). Therefore, the Court rejects this objection.[4]

Lastly, as to Radford's objection to the Report's finding that "[t]he comparator evidence offered by Plaintiff fails to raise a triable issue of fact[,]" the Court equally rejects this objection. The Report states, "[t]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019) (citations omitted). Radford's objection does not indicate how these elements are met. Instead, Radford simply states "Plaintiff presented evidence of three white Directors who had significant performance and/or program compliance issues which significantly jeopardized Defendant's operations." (DE 56, p. 11.) Therefore, this objection lacks merit and is rejected.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 53) as modified herein and incorporates it by reference.

It is, therefore, **ORDERED** that Defendant's Motion for Summary Judgment (DE 32) is granted in part and denied in part.

**IT IS SO ORDERED**.

---

[4]   Equally, the Court rejects Radford's retaliation and temporal proximity objections to the Report for the same reasons provided herein and in the Report.

9

_____
Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 29, 2022

10